IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TRAVELER'S PROPERTY CASUALTY COMPANY OF AMERICA, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:11-cv-0236-AT |
| v. | : : : | |
| JUSTIN MAURICE MOORE, WILLIE THACKSTON, THE ESTATE OF BRANDON THOMAS, BRANDY THOMAS, | : : : : : : | |
| Defendants. | : | |

## **ORDER**

This matter comes before the Court on Plaintiff's motion for summary judgment [Doc. 42] and Defendants' cross-motion for summary judgment [Doc. 46].[1] Plaintiff Travelers Property Casualty Company of America ("Travelers") filed the instant suit seeking a declaratory judgment that it has no obligation under the policy for the incident

---

[1] Defendants moved for leave to file their untimely cross-motion for summary judgment claiming that they did not realize until they read Plaintiff's motion for summary judgment that Rhode Island law would apply. This is a poor excuse as an elementary internet search indicates that GTech, the owner of the vehicle at issue in this case, is headquartered in Rhode Island, although it is also located in Georgia. However, the Defendants filed their cross-motion for summary judgment along with their response to the Plaintiff's motion for summary judgment once they learned that the insurance policy in dispute had been delivered in Rhode Island, and they did not engage in dilatory tactics. [Doc. 55.] The Court therefore **GRANTS** Defendant's motion for leave [Doc. 55] and **DENIES** Plaintiff's motion to strike [Doc. 53] in the interest of judicial economy.

in question. Plaintiff moves for summary judgment claiming that based on the undisputed facts, Defendant Moore was not an "insured" at the time of the incident. Defendants Willie Thackston, the Estate of Brandon Thomas, and Brandy Thomas, surviving spouse of Brandon Thomas, (collectively, "Thackston and the Thomas Estate") filed a cross-motion for summary judgment seeking a declaratory judgment that Defendant Moore was an "insured" at the time of the accident. Thackston and the Thomas Estate also claim that the Travelers policy provides coverage for the incident in question. The Court's decision and analysis are set forth below.

## I. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law. *Id.* The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. *Id.* at 249.

When ruling on the motion, the court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case;

rather, the moving party must establish the lack of evidentiary support for the non-moving party's position.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial.  *Id.* At 324-26.  The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## II. BACKGROUND

In reviewing the parties' cross-motions for summary judgment, the Court analyzes the undisputed facts as well as other evidence in the light most favorable to the non-moving party in each instance.  *See Reeves*, 530 U.S. at 150.  The factual summary below is not intended to represent the Court's actual findings of fact. However, the parties agree in significant part on the underlying facts.

Defendant Justin Moore was employed by GTech, a lottery equipment company. (Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶¶ 13, 14.) GTech issued Moore a van to be used for business purposes. (*Id.* ¶¶ 5, 17, 18.) Moore signed a copy of the GTech Fleet Policy and the Acknowledgment Form on June 10, 2008. (*Id.* ¶ 16.) These documents provided that the vehicle was not for personal use. (*Id.* ¶¶ 17, 18; Compl. Ex. A, B.) Additionally, the Acknowledgment Form signed by Moore had a checked box further

noting that the GTech vehicle was not to be used for personal use. (Pl.'s SMF ¶ 20, Compl. Ex. B.)

GTech vehicles are insured by Plaintiff Travelers. (Pl.'s SMF ¶¶ 21, 22.) The policy provides coverage for "insured" persons, defined as those using a covered vehicle with the permission of GTech. (*Id.* ¶ 24; Compl. Ex. C.)

On November 12, 2009, Willie Thackston and Brandon Thomas went to the home of Defendant Justin Moore to repossess his personal vehicle, a Ford Mustang. (Pl.'s SMF ¶ 1.) As Thackston and Thomas were loading the Mustang onto the tow truck, Moore came out of his house with a sawed-off shotgun and fired a "warning shot." (*Id.* ¶ 2.) After the "warning shot," Thackston and Thomas drove off, towing the Ford Mustang. (*Id.* ¶ 3.) As they drove away, Moore fired two shots at the back of the truck. (*Id.* ¶ 4.) Then, Moore got into the GTech van and began to chase Thackston and Thomas. (*Id.* ¶ 5.) Eventually, Moore caught up to the tow truck. (*Id.* ¶ 6.) Moore testified that as he caught up to the tow truck, the tow truck was swerving from left to right. (Tr. Transcript at 52:1-7.) When both vehicles reached a cul-de-sac, Moore drove alongside the tow truck, and the two vehicles collided. (Tr. Transcript at 52:7-12.) According to Moore, the shotgun discharged unintentionally as he attempted to dislodge it from the passenger-side rearview mirror, where it had become lodged upon the collision. (Tr. Transcript at 54:1-24.) Thackston and Thomas were hit. (Pl.'s SMF ¶¶ 6, 7.) Thackston survived, but Thomas died as a result of his injuries. (*Id.* ¶ 7.)

On December 6, 2010, a jury found Moore guilty of felony murder, aggravated assault with a deadly weapon, and other charges. (*Id.* ¶ 11.) Moore is presently incarcerated on a sentence of life in prison. (*Id.* ¶ 12.)

On October 25, 2011, Defendants Willie Thackston, Allison Thackston, Brandy Thomas, and the Thomas Estate filed suit as plaintiff's against Moore in the State Court of Fulton County, Georgia for injuries resulting from the November 12, 2009, incident. (*Id.* ¶ 25.) Thackston and the Thomas Estate claim that the Travelers policy issued to GTech provides coverage for their claims against Moore. (*Id.* ¶ 26.) Travelers in turn filed the instant suit to clarify the extent of its liability under the policy. The Court notes additional facts as necessary throughout the order.

### III.  DISCUSSION

*a.  Choice of Law*

"Federal courts sitting in diversity apply the forum state's choice-of-law rules." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 135 F. 3d 750, 752 (11th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)).  "Georgia does not have a statutory choice-of-law rule, but in contract cases, it follows the traditional doctrine of *lex loci contractus.*" *Id.  (*citing *General Tel. co. v. Trimm*, 311 S.E. 2d 460, 461 (Ga. 1984).  Under the *lex loci contractus* doctrine, contracts are governed by the law of the place where they were made, unless the contract is to be performed in another state. *Id.* "Under Georgia law, an insurance contract is 'made' where it is delivered." *Id.* (citing *Pink v. A.A.A. Highway Express, Inc.,* 13 S.E. 2d 337 (Ga. 1941)).

In the instant case, the Travelers policy was delivered to GTech in Rhode Island. (Pl.'s Br. Supp. Mot. Summ. J. at 9.)[2] Neither party suggests that the policy was originated in order to be solely or chiefly performed in a specific state other than Rhode Island. Rather it appears that GTech, a Rhode Island Company, established the policy with Travelers to insure its corporate vehicles wherever GTech does business. Additionally, the application of Rhode Island law in this matter does not conflict with any Georgia public policy. *See Johnson v. Occidental Fire and Gas Co. of North Carolina*, 954 F. 2d 1581, 1584 (11th Cir. 1992) (Georgia courts will apply the laws of the appropriate state unless "the applicability of the law of the chosen state would be contrary to Georgia's public policy."). Therefore, the Court applies Rhode Island law to the instant case.[3]

### b. Plaintiff's theories of non-liability for the November 12, 2009, incident

The facts of this case raise multiple questions regarding Travelers' potential liability under the policy, first and foremost whether the policy would cover what a jury determined to be a murder and aggravated assault. Indeed, in its complaint, Travelers asserts, "For coverage to apply under the Travelers Policy, Thackston and Thomas' injuries must have been caused by an 'accident.' Thackston and Thomas' injuries were not caused by an 'accident.'" (Compl. ¶ 24.) Travelers further alleges that the policy excludes coverage for an "expected or intended" injury, stating, "This insurance does not

---

[2] Although Travelers does not cite any record evidence in support of this statement, Defendants do not contest the fact that the contract was delivered in Rhode Island and agree that Rhode Island law applies.
[3] Furthermore, the parties agree that Rhode Island law applies. (*See* Br. Pl. Supp. Mot. Summ. J. at 9-10; Def.'s Br. Opp. Pl.'s Mot. Summ. J. at 10.) Therefore, they have waived their right to contest the application of Rhode Island law to this matter. *See Daewoo Motor Am., Inc. v. Gen. Motors Corp.,* 459 F. 3d 1249, 1256 – 57 (11th Cir. 2006) (holding that failure to raise the choice of law issue before the district court waives the right to appeal the issue.)

6

apply to 'bodily injury' or 'property damage' expected or intended from the standpoint of the 'insured.'" (*Id.* ¶ 25.) Travelers alleges that Moore expected or intended Thackston and Thomas's injuries. (*Id.* ¶ 28.)

Despite raising the "expected or intended" injury exclusion in its complaint, Plaintiff moved for summary judgment solely on the basis of Justin Moore not being an "insured" under the policy. Similarly, in response to Defendants' cross-motion for summary judgment, Plaintiff argues that "the Court only needs to answer one question: Did Mr. Moore have permission to use the GTech van on the night in question?" (Pl.'s Reply Br. Supp. Summ. J. at 9.)  In so arguing, Plaintiff apparently abandons its alternative theory for non-liability under the policy, the expected injury exclusion.  If Moore did not qualify as an "insured" at the time of the incident, then summary judgment for Travelers would be appropriate because Defendants would have no basis for reaching the policy. However, if Moore was an "insured" at the time of the incident, only partial summary judgment in favor of Thackston and the Thomas Estate would be appropriate.  Issues of fact would remain as to Travelers' liability – specifically, whether Moore intended to cause the injuries, and therefore triggered the "expected or intended" exclusion under the policy.  Although Plaintiff failed to properly address this issue in its briefing, the Court has an independent obligation to determine whether a party is entitled to summary judgment. *See Dunlap v. Transamerica Occidental Life Ins. Co.,* 858 F. 2d 629, 632 (11th Cir. 1988) (Per Curiam) (district court cannot base the entry of summary judgment on the mere fact that a motion was unopposed, but must consider the merits).

7

*c. Was Moore an "insured" at the time of the November 12, 2009 incident?*

Travelers contends that Defendant Moore was not an "insured" at the time of the incident because he was not using the GTech van with permission. Travelers asserts that Moore had GTech's permission to use the van only for business purposes and not for personal or criminal purposes. Defendants rebut Travelers theory of non-liability by invoking R.I. Gen. Laws § 31-33-7.[4]  Generally, R.I. Gen. Laws § 31-33-6 and 31-33-7 are pled together, as they create a statutory scheme under which the owner of a vehicle is liable for injuries caused if the owner gave the driver any permission at all to use the vehicle.  The statutes provide:

> Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, lessee, or bailee, expressed or implied, the driver of it, if other than the owner, lessee, or bailee, shall in the case of an accident be deemed to be the agent of the owner, lessee, or bailee, of the motor vehicle unless the driver shall have furnished proof of financial responsibility in the amount set forth in chapter 32 of this title, prior to the accident. For the purposes of this section, the term "owner" shall include any person, firm, copartnership, association, or corporation having the lawful possession or control of a motor vehicle under a written sale agreement.

R.I. Gen. Laws § 31-33-6.  And:

> In all civil proceedings, evidence that at the time of the accident or collision the motor vehicle was registered in the name of the defendant, shall be prima facie evidence that it was being operated with the consent of the defendant, and the absence of consent shall be an affirmative defense to be set up in the answer and proved by the defendant.

---

[4] While § 31-33-7 requires evidence that the vehicle was registered in the name of the defendant, the parties do not dispute that the vehicle was owned by GTech and covered by the Travelers policy. (*See* Pl.'s SMF ¶ 5.) Accordingly, the Court relies on this undisputed fact pursuant to its discretion under the Federal Rules of Civil Procedure. F.R.C.P. 56(e)(2)-(4) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order.")

8

R.I. Gen. Laws Ann. § 31-33-7.

Based on § 31-33-7, Defendants argue that Moore was an insured at the time of the incident as the Rhode Island cases interpreting this provision do not allow the owner of a vehicle to escape liability by limiting the scope of permission given to the driver. Plaintiff responds that the Rhode Island statute does not apply here because (1) the statute may be invoked only by those who raise it in their initial pleadings, and (2) the vehicle used in the incident was not registered in Rhode Island. In the alternative, Plaintiff argues that even if the statute does apply, it is still entitled to summary judgment because the statute merely creates a presumption of consent. Plaintiff claims to have overcome this presumption with the evidence it has presented.

*1. Failure to plead § 31-33-7*

Plaintiff argues that Defendants cannot make use of § 31-33-7 in the instant case because they failed to plead it in their answer. Pleading rules are generally procedural in nature, and this Court is bound to apply the Federal Rules of Civil Procedure in a diversity case, not the procedural rules of the relevant state. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 130 S. Ct. 1431, 1442 (2010). In order to fairly evaluate Plaintiff's argument, therefore, the Court examines analogous federal pleading rules.

Plaintiff relies on *Ostrosky v. Sczapa* for the proposition that a party must raise § 31-33-7 in its initial pleading. 868 F.2d 1 (1st Cir. 1989). The *Ostrosky* court observed that "Rhode Island limits the use of this statute to plaintiffs who plead it." *Ostrosky*, 868 F.2d 1, 2. Indeed, Rhode Island courts applying Rhode Island procedural rules have

held that a plaintiff must plead § 31-33-7 in order to be entitled to its benefits. *Martin v. Lilly*, 505 A.2d 1156, 1160 (R.I. 1986), *Battista v. Muscatelli*, 261 A.2d 636, 638 (R.I. 1970). For a plaintiff seeking recovery, § 31-33-7 is an alternative theory of imposing liability on the registered or legally responsible owner, and a plaintiff must allege that the defendant is the registered owner of the vehicle in order to implicate the statute. Once a plaintiff asserts this theory of liability, the statute requires a defendant to plead lack of consent as an affirmative defense. *See* R.I. Gen. Laws § 31-33-7 (the absence of consent "shall be an affirmative defense to be set up in the answer and proved by the defendant").

However, Thackston and Thomas are not plaintiffs seeking to recover damages from GTech, the registered owner of the vehicle, in this action.[5] If they were, Rhode Island rules of procedure would require them to assert § 31-33-7 as a basis for recovery in the complaint, and the Court would consider whether the Federal Rules require such. *See Martin*, 505 A. 2d at 1160, *Battista*, 261 A. 2d at 517. Rather, here Travelers filed suit for a declaratory judgment of non-liability under the policy. Defendants may properly respond by refuting the central allegation of Travelers' motion for summary judgment – that Moore was not an "insured" under the policy. They may do this by pointing out that under Rhode Island law, including § 31-33-7 and the cases interpreting that statute, evidence that a vehicle was registered in GTech's name "shall be prima facie evidence that it was being operated with the consent of said [registered owner]."

---

[5] Thackston and the Thomas Estate likely have an independent ground for asserting a liability claim against GTech based on R.I. Gen. Laws §§ 31-33-6 and 7, but GTech is not a party to Thackston and the Thomas Estate's state court action at this time.

10

As Thackston and the Thomas Estate are defendants in this action, the key question is whether § 31-33-7 is analogous to an affirmative defense that the Federal Rules required Defendants to plead in their answer. *See* F.R.C.P. 8(c).[6] An affirmative defense "raises matters extraneous to the plaintiff's *prima facie* case" that can defeat a claim. *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) (quotation omitted). "An affirmative defense is established only when a defendant admits the essential facts of a complaint and sets up other facts in justification or avoidance." *Will v. Richardson-Merrell, Inc.*, 647 F. Supp. 544, 547 (S.D. Ga. 1986) (emphasis omitted).

In the instant case, Defendants invoke § 31-33-7 to defeat Plaintiff's allegation that Moore was not an "insured" at the time of the incident. (*See* Compl. ¶¶ 23, 31.) Therefore, as Defendants raise § 31-33-7 to refute a central allegation of Plaintiff's claim, rather than as an independent means of avoiding liability, it does not constitute an affirmative defense under the Federal Rules.

Furthermore, the purpose of requiring affirmative defenses to be pled in responsive pleadings "is to give the opposing party notice of the [affirmative defense] and a chance to argue, if he can, why the imposition of [the affirmative defense] would be inappropriate." *Blonder-Tongue Labs., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971); *see also Bergquist v. Fidelity Info. Servs., Inc.*, 197 F. App'x 813, 815 (11th Cir. 2006) ("it is plain that the purpose of Rule 8(c) [is] simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial"). In Defendants' answers to Plaintiff's amended complaint, Defendants denied the

---

[6] The Rhode Island statute cannot be construed as raising issues akin to the waivable defenses of lack of personal jurisdiction, improper venue, insufficient process, or insufficient service of process. *See* F.R.C.P. 12(b)(2)-(5).

11

allegations that Moore was using the van without GTech's permission on Novemeber 12, 2009, and that Moore was not an insured at the time of the incident. (Thackston Answer ¶¶ 23, 31; Thomas Estate Answer ¶¶ 23, 31.) Although Defendants did not invoke § 31-33-7 as their theory for why Moore should qualify as an insured, Plaintiff was properly put on notice that Defendants intended to contest the issue. Therefore, Defendants are not barred from invoking § 31-33-7 at this point in the litigation due to a failure to invoke it in their answer.

### *2. Vehicle Registered Outside of Rhode Island*

In the alternative, Plaintiff posits that § 31-33-7 is not applicable to the instant case because the van driven by Moore was not registered in Rhode Island. In support of this position, Plaintiff relies on the First Circuit's determination in *Ostrosky* that § 31-33-7 was inapplicable to a vehicle not registered in Rhode Island because the statute "has to do with Rhode Island internal matters." *Ostrosky*, 868 F. 2d at 2. The Rhode Island Supreme Court has more recently spoken on this issue in *Black v. Vaiciulis*, 934 A. 2d 216 (R.I. 2007). In *Black*, Larry Stagner, the owner and officer of a Texas-based construction company, drove from Texas to Rhode Island in the company truck with an employee to complete a construction job. *Black*, 934 A. 2d at 217. Three weeks into the Rhode Island project, Stagner had to return to Texas for a weekend. *Id.* He left the truck under the care of the employee with specific instructions not to use it during the weekend. *Id.* The employee did use the vehicle and was involved in a car accident, injuring Black. *Id.* The *Black* court imposed liability under R.I. Gen. Laws § 31-33-6 and § 31-33-7 with no concern that the vehicle was registered outside of Rhode Island.

*Id.* Under *Black,* the state of registration is immaterial to the applicability of § 31-33-7. *Id.; see also Kernan v. Webb,* 148 A. 186, 187 (R.I. 1929) (applying § 31-33-6 (previously titled chapter 1040, § 3) despite the fact that the owner of the vehicle resided in Massachusetts). Plaintiff's reliance on the First Circuit's decision in *Ostrosky* is unavailing, as this Court is bound by the Rhode Island Supreme Court's more recent interpretation of the Rhode Island statute in *Black*.[7] Accordingly, § 31-33-7 applies to the instant case regardless of the non-Rhode Island vehicle registration.

### 3. Overcoming the presumption of consent

Having determined that § 31-33-7 applies, the Court now turns to Plaintiff's contention that summary judgment in its favor is still proper because it has overcome the presumption created by the statute. Given the Rhode Island Supreme Court's construction of § 31-33-7 in numerous cases, a party can only overcome the presumption of consent by offering proof that the owner did not give the driver <u>any</u> permission to use the vehicle. The Rhode Island Supreme Court explained its construction of the statute this way:

> The foundation of this statutory liability of the owner is the permission given to another to use an instrumentality which, if improperly used, is a danger and a menace to the public. The owner can avoid this liability by refusing to permit the use of his automobile by another. If he does permit such use, he cannot avoid the consequences of the operator's negligence and escape liability therefore by secret restrictions of the right to use the motor vehicle.

*Kernan v. Webb,* 148 A. at 188. Essentially, the Rhode Island court has construed the statute to impose a rule that an owner's consent to another's use of a vehicle cannot be

---

[7] As the Defendants correctly note, the Rhode Island Supreme Court's decision in *Black*, 18 years after the First Circuit's decision in *Ostrosky*, represents the most current interpretation of § 31-33-7.

13

limited in scope. *See Black*, 934 A. 2d at 221 (Employer/owner held liable for the accident involving employee/driver despite employer's instructions limiting use to business purposes); *F.D. McKendall Lumber Co. v. Ramieri,* 126 A. 2d 560, 562 (R.I. 1956) ("We have refused to construe the statute in such a manner as to allow the owner of a motor vehicle to show that the consent given the employee was limited to his working hours or to activities normal to his employment.").

In sum, Rhode Island Courts apply a bright line standard in assessing the liability of an employer/owner and employee/driver of a vehicle. An employer may not condition liability by limiting the scope of its authorization to employees for use of company vehicles for certain purposes or for certain hours. As the Rhode Island Supreme Court reiterated in *Black*, "Any construction of the statute that would allow the employer, as in the instant case, to show that the initial consent was limited to the normal working time of his servant and confined to the normal route over which the truck would customarily be operated in the course of the operator's employment, would have the effect of restoring certain common-law defenses which the statute was designed to abrogate." *Black*, 934 A. 2d at 220 (citing *Baker v. Rhode Island Ice Co.,* 50 A. 2d 618, 621 (R.I. 1946); *see also Kent v. Draper Soap Co.,* 63 A. 2d 571, 574 (R.I. 1949) (holding that the Rhode Island legislature eliminated through enactment of § 31-33-7 the ordinary defenses available under the law of agency). The Court finds no case in an employment context where the employer/owner has been able to overcome the presumption created by § 31-33-7. Under Rhode Island law, in a non-employment context, the only slim reed that an owner of a vehicle can rely upon in defeating a statutory presumption of consent

arises where the owner has expressly refused to give the driver permission to use the vehicle *under any circumstances whatsoever*. *See Andreoni v. Ainsworth*, 898 A. 2d 1240, 1243-44 (R.I. 2006) (finding that when a mother claimed that she did not give her son any permission at all to drive her vehicle, summary judgment was not proper because whether consent existed was a question for the jury).

Plaintiff relies on *LaFratta v. Rhode Island Public Transit Authority* for the proposition that the presumption created by § 31-33-7 can be overcome with sufficient evidence. 751 A. 2d 1281 (R.I. 2000). In *LaFratta*, plaintiffs were injured in a car accident caused by Bryant Barnes. *Id.* at 1283. Barnes was driving a Budget rental car when the accident occurred, and the plaintiffs sued Budget. *Id.* The court noted in passing that Budget successfully rebutted the presumption created by § 31-33-7 because the rental agreement was a contract between Budget and Noel D. James. *Id.* at 1282. ("The defendant raised lack of consent in its answer, and the rental agreement provided the requisite proof."). However, the *LaFratta* court ultimately hinged its decision on a different Rhode Island statute, § 31-34-4,[8] which applies to rental vehicles. *Id.* at 1284-85. Also, the *LaFratta* court noted that the driver, Barnes, "was no more than a casual

---

[8] "(a) Any owner of a for hire motor vehicle or truck who has given proof of financial responsibility under this chapter or who in violation of this chapter has failed to give proof of financial responsibility, shall be jointly and severally liable with any person operating the vehicle for any damages caused by the negligence of any person operating the vehicle by or with the permission of the owner. Nothing in this section shall be construed to prevent an owner who has furnished proof of financial responsibility or any person operating the vehicle from making defense in an action upon the ground of contributory negligence to the extent to which the defense is allowed in other cases.
(b)Notwithstanding the provisions of subsection (a) of this section, or any provisions contained under title 31 to the contrary, the valid and collectable liability insurance or self-insurance providing coverage or liability protection for third party liability claims arising out of the operation of the rental vehicle shall be primary for the lessor or any person operating the motor vehicle, with the express permission of the lessor unless otherwise stated in at least ten (10) point type on the face of the rental agreement. That insurance or self-insurance is primary only up to the limits required under § 31-31-7.
(c)"Lessor" includes any entity in the business of renting motor vehicles pursuant to a written rental agreement." R.I. Gen. Laws § 31-34-4 (emphasis added).

15

acquaintance of James, and certainly not a co-worker, employee, or employer." The very distinct facts and legal grounds for the Court's decision in *LaFratta* make it inapposite here.

In the instant case, Travelers does not claim that Moore did not have <u>any</u> permission to use the vehicle, but that he had limited permission. All of the evidence Travelers points to in the record relates to the scope of the permission being limited to business use only. This evidence is unavailing, as under Rhode Island law, any permission at all is sufficient to establish the liability of the owner under § 31-33-7. Thus, GTech's consent has been established as a matter of law under R.I. Gen. Laws § 31-33-7 and Moore was an "insured" at the time of the incident.

## IV.   CONCLUSION

For the reasons explained above, the Court **DENIES** Plaintiff's motion for summary judgment [Doc. 42]. The Court **GRANTS IN PART** Defendants cross-motion for summary judgment [Doc. 46], in so far as the Court finds that Moore was an "insured" at the time of the incident. However, material disputes of fact still exist regarding whether the policy exclusion applies to the incident in question – specifically, whether the resulting bodily injury was "expected or intended from the standpoint of the insured."[9] The Court **DENIES** Plaintiff's motion to strike Defendants cross-motion for summary judgment [Doc. 53], and **GRANTS** *nunc pro tunc* Defendants' motion to permit the late filing of their cross-motion for summary judgment [Doc. 55].

---

[9] The Court notes that the question of whether summary judgment on all claims should be entered might be different if GTech were a defendant in Thackston and the Thomas Estate's state court suits.  GTech and Moore arguably stand in different positions as insureds under the Travelers policy.

The Court orders the parties to participate in mediation of the remaining issues in this case.  The parties shall select a private mediator within twenty (20) days of the entry of this Order.  If the parties are unable to agree on a private mediator, the parties shall immediately notify the Court.  The Court will then appoint a mediator to work with the parties on resolving the issues in this case. The mediation in this matter shall be concluded within forty (40) days of this order. In the event the mediation is unsuccessful, the parties shall submit their proposed consolidated pretrial order no later than thirty (30) days after the conclusion of the mediation.

It is **SO ORDERED** this 6th day of July, 2012.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**